IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DANIEL RICHARD ZALES, #187017                              PETITIONER

V.                                      CIVIL ACTION NO. 3:16cv561-CWR-JCG

PELICIA HALL, *Commissioner*                              RESPONDENT

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the Petition under 28 U.S.C. § 2254 for Writ of
Habeas Corpus by a Person in State Custody, filed by Petitioner Daniel Richard
Zales. The Petition challenges Zales' 2013 conviction for uttering a counterfeit
instrument and resulting enhanced sentence as a habitual offender to ten years.
Having considered the submissions of the parties, the record, and relevant legal
authority, the undersigned United States Magistrate Judge recommends that
Petitioner's request for relief pursuant to 28 U.S.C. § 2254 be denied. Mr. Zales has
not demonstrated that he is entitled to federal habeas relief.

## I. BACKGROUND

Petitioner Zales is a postconviction inmate in the custody of the Mississippi
Department of Corrections ("MDOC"). On October 28, 2013, he was convicted in the
Circuit Court of Kemper County, Mississippi of uttering a counterfeit instrument.
*Zales v. State*, 194 So. 3d 182, 184-85 (Miss. Ct. App. 2015). Zales had been indicted
as a habitual offender for kidnapping, rape, and uttering a counterfeit instrument,
but the State offered to *nolle prosequi* the kidnapping and rape charges in exchange

for Zales' *Alford*[1] plea to uttering a counterfeit instrument. *Id.* at 185.

Two weeks before trial, Zales dismissed his court-appointed counsel Marcus Evans and elected to represent himself. *Id.* at 185. The circuit court allowed Zales to proceed *pro se* with Marcus Evans remaining as standby counsel only. *Id.* On the morning of trial, Zales chose to accept the State of Mississippi's plea offer. *Id.* The charge to which he pleaded guilty alleged that he "publish[ed] to the circuit clerk a forged certificate of marriage, falsely claiming the marriage was performed by an ordained minister, when in fact Zales knew the minister's name on the certificate was forged." *Id.* at 184. Informed of the plea agreement, the circuit judge conducted an inquiry to determine whether Zales' plea was voluntary, and satisfied that it was, accepted the plea. Zales was sentenced under Mississippi Code Sections 97-21-59[2] and 99-19-81[3] as a habitual offender to ten years in MDOC custody, without

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

[2] The circuit court erroneously cited to Mississippi Code § 99-21-59, which does not exist in the Code. Uttering counterfeit instruments is outlined by § 97-21-59:

> Every person who shall be convicted of having uttered or published as true, and with intent to defraud, any forged, altered, or counterfeit instrument, or any counterfeit gold or silver coin, the forgery, altering, or counterfeiting of which is declared by the provisions of this chapter to be an offense, knowing such instrument or coin to be forged, altered, or counterfeited, shall suffer the punishment herein provided for forgery, pursuant to Section 97-21-33.

Miss. Code Ann. § 97-21-59.

[3] Mississippi Code § 99-19-81 provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in

the possibility of reduction, suspension, parole, or probation. *Id.* at 185; *Zales v. State of Mississippi*, No. 2014-CV-06(W) (Cir. Ct. Kemper Cty. Miss. Aug. 13, 2014), (ECF No. 12-1, at 5).

On January 14, 2014, Zales filed a motion for postconviction relief in the Circuit Court of Kemper County, Mississippi. Zales claimed that (1) his *Alford* plea was neither intelligent nor voluntary, (2) he received ineffective assistance of counsel, (3) the circuit court erred by entering judgment on his plea without ensuring a factual basis for the charged pleaded and allowing Zales to be convicted as a habitual offender, and (4) the prosecution engaged in misconduct by withholding *Brady*[4] material and failing to proffer evidence of the crime. (ECF No. 12-1, at 6-24). The circuit court denied the motion for postconviction relief on August 12, 2014. *Id.* at 25.

Zales appealed. Zales again challenged the validity of his guilty plea and asserted that he received ineffective assistance of counsel. The Mississippi Court of Appeals rejected these arguments, finding that Zales' guilty plea was knowing, intelligent, and voluntary; there was a factual basis for the plea; and the ineffectiveness of counsel claim was barred by a voluntary waiver of the right to

---

this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81.

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

counsel. *Zales*, 194 So. 3d at 185-88. Zales made numerous other arguments regarding procedural rights he claimed he was not properly afforded and alleged that there was insufficient evidence to convict him. The court of appeals found that Zales had waived these rights and claims due to the entry of a valid guilty plea. *Id.* at 188. Zales' request for rehearing was denied May 3, 2016, and the Mississippi Supreme Court denied certiorari on July 21, 2016. *Zales v. State*, 209 So. 3d 428 (Miss. 2016) (table).

On July 15 , 2016, Zales filed the instant 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, in which he raises four grounds for relief:

> 1. Petitioner was denied due process of the Sixth Amendment and Fourteenth Amendment right to '"be informed of the nature and cause of the accusations against him." The plea was not knowing, voluntary, and intelligent. There can be no doubt Petitioner suffered substantial prejudice thereby.
> …

> 2. Trial court failed to inform Zales of his Fifth Amendment right against compulsory self incrimination prior to coercing and inducing him to incriminate himself in Plea colloquy. The waiver was not an intentional relinquishment or abandonment of a known right because the court did not make clear what Zales was waiving. The waiver was unknowing and involuntary; Under the Due process clause of the Fifth Amendment the prosecution did not establish every element of the crime Zales was charged.
> …

> 3. The trial court, the government, petitioners' stand by counsel failed to investigate the use of prior convictions used to enhance sentence to habitual offender after Zales raised his desire to challenge the use of prior convictions to enhance sentence where Zales was not

4

represented by counsel in prior convictions.

…

4.   While petitioner Zales case was pending and not Final
     in the Mississippi Court of Appeals, the statu[t]e 97-21-
     33 regarding the length of the sentence was repealed
     and changed on July 1st 2014 by the legislature. This
     changes the sentence from 10yr. to 3yr. Zales brought
     this argument up on appeal but the Mississippi Court
     of Appeals bypassed and refused to review Zales
     argument on appeal. Because Zales case was not final
     and was on appeal when the statu[t]e was changed the
     Mississippi Court of Appeals erred when they failed to
     apply the law which governed at time of appeal decision
     was made.

(ECF No. 1, at 54, 58, 61, 63) (all sic in original).

Respondent Pelicia Hall filed a Response (ECF No. 12) on September 9, 2016,

arguing that (1) Zales claim in Ground Four is procedurally defaulted and (2) Zales

had not established that the State court's decisions on the merits, with respect to

Grounds One, Two, and Three, were contrary to clearly established federal law,

involved an unreasonable application of clearly established Supreme Court law, or

were based on an unreasonable determination of the facts in light of the evidence

presented.

## II. DISCUSSION

A.    <u>Standard of Review</u>

Before considering the merits of a petition under 28 U.S.C. § 2254 for writ of

habeas corpus, the Court must first determine if all procedural steps necessary to

preserve each issue raised for federal review have been taken. First, the petition

must be timely filed with the Court in compliance with 28 U.S.C. § 2244(d)(1).[5]
Second, a writ of habeas corpus may not be granted unless it appears that a
petitioner has exhausted all available state court remedies. *See* 28 U.S.C. §
2254(b)(1). To exhaust a federal constitutional claim, a petitioner must "fairly
present" in state court both the operative facts and federal legal theory of his or her
claim in a procedurally proper manner. *O'Sullivan v. Boerckel,* 526 U.S. 838, 848
(1999).

As a matter of comity and federalism, federal courts generally may not
review a state court's denial of a federal constitutional claim if the state court's
decision rests on a state procedural ground that is independent of the federal
question and adequate to support the judgment. *Coleman v. Thompson,* 501 U.S.
722, 729-30 (1991). "To qualify as an 'adequate' procedural ground, a state rule
must be 'firmly established and regularly followed.'" *Walker v. Martin,* 131 S. Ct.
1120, 1127-28 (2011); *see Beard v. Kindler,* 130 S. Ct. 612, 617-18 (2009). A federal
court may also find claims procedurally defaulted if the petitioner failed to present
them in state court and "the court to which the petitioner would be required to
present his claims in order to meet the exhaustion requirement would now find the
claims procedurally barred." *Coleman,* 501 U.S. at 735 n.1; *see Sones v. Hargett,* 61
F.3d 410, 416 (5th Cir. 1995). Federal courts retain the power to consider the merits
of a procedurally defaulted claim if the petitioner demonstrates legitimate cause for

---

[5] There is no challenge to the timeliness of the Petition.

the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim is not heard on the merits in federal court. *See Schlup v. Delo,* 513 U.S. 298, 324-27 (1995).

Substantively, the issue in a federal habeas proceeding is not whether there was an error in applying state law but instead whether there has been a denial of rights protected by the United States Constitution. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* The federal courts do not function as super appellate courts over the states to review errors under state law and may not correct errors of state law unless they also violate the constitutional rights of an accused. *See Smith v. Phillips,* 455 U.S. 209, 221 (1981); *Mendiola v. Estelle,* 635 F.2d 487, 491 (5th Cir. 1981).

Even in matters affecting constitutional rights, federal courts have a very limited scope of review. The Court's authority to grant relief to a person held in custody pursuant to a state judgment is narrowly circumscribed by 28 U.S.C. § 2254 (d), which provides that a writ of habeas corpus shall not be granted unless the state court adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

7

evidence presented in the State court proceeding.

As recently summarized by the Fifth Circuit Court of Appeals:

> Because "§ 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning," there are three ways a federal court can grant habeas relief: (1) if the state court decision was contrary to clearly established Supreme Court law; (2) if the state court decision involved an unreasonable application of clearly established Supreme Court law; or (3) if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. "AEDPA's standard is intentionally difficult to meet."

*Poree v. Collins,* 866 F.3d 235, 245 (5th Cir. 2017) (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002); *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015)).

The state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(d)(2). The petitioner may rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B.    Analysis

1.    Zales Failed to Exhaust his Claim in Ground Four, and This Claims is Now Procedurally Defaulted

Zales asserts that he is entitled to the application of a lesser sentence provided for in the amended version of Mississippi Code § 97-21-33 that became effective after his sentence was imposed and while he was appealing the denial of his motion for postconviction relief. (ECF No. 1, at 63-65). Zales' argument concedes his own failure to exhaust. Zales raised his claim in Ground Four for the first time in a supplemental pleading before the court of appeals. (ECF No. 12, at 7 n.3); *see also* (ECF No. 1, at 19-30). Zales never presented the claim to the circuit court.

8

Thus, the claim was never properly before the court of appeals and was never properly before the Mississippi Supreme Court. *See Stockstill v. State*, 854 So. 2d 1017, 1023 (Miss. 2003) ("[T]his Court has … consistently held that errors raised for the first time on appeal will not be considered…."). Because Zales did not fairly present this claim to the Mississippi Supreme Court in a procedurally proper manner, Ground Four is not exhausted. *O'Sullivan,* 526 U.S. at 848.

Zales claim in Ground Four is now procedurally defaulted because the circuit court would find the claim procedurally barred by Mississippi Code § 99-39-5(2), which requires a motion for postconviction relief to be filed "within three (3) years after entry of the judgment of conviction" in the case of a guilty plea. Miss. Code § 99-39-5(2). Zales' deadline to file a motion for postconviction relief was October 28, 2016. His claim is therefore procedurally defaulted because the circuit court "would now find the claim[] procedurally barred." *Coleman*, 501 U.S. at 735 n.1. This Court is precluded from considering the merits of Zales' claim in Ground Four unless he can demonstrate (1) cause for the default and actual prejudice resulting from the alleged violation of law or (2) that the failure of this Court to consider his claim will result in a fundamental miscarriage of justice. *Williams v. Thaler*, 602 F.3d 291, 307 (5th Cir. 2010).

"'Cause' in this context is something external to the petitioner that cannot be fairly attributed to him." *Coleman,* 501 U.S. at 753. "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis

for a claim was not reasonably available to" the petitioner. *McCleskey v. Zant,* 499 U.S. 467, 493-94 (1991) (citation and quotation marks omitted). Zales' failure to timely raise this claim in circuit court cannot be blamed on something external that cannot be fairly attributed to Zales. Although the statute under which he was sentenced was amended after he filed his motion for postconviction relief, nothing prevented Zales from filing a subsequent motion for postconviction relief raising this claim before October 28, 2016. Because Zales has failed to demonstrate cause, the Court need not question whether there is actual prejudice. *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996) (citing *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992)).

The miscarriage of justice exception is reserved for a petitioner who "is 'actually innocent' of either the offense giving rise to his conviction or 'actually innocent' of the death penalty." *McCleskey,* 499 U.S. at 493-94 (citations omitted). Zales does not claim that he is actually innocent. In Ground Four, he only argues that his sentence should be reduced from ten years to three years based on a subsequent amendment to the statute under which he was sentenced. Therefore, Zales' Petition "does not fit within the narrow category of [§ 2254] proceedings [that] implicate a fundamental miscarriage of justice." *United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993).[6]

---

[6] The Court also notes that Zales' argument in Ground Four appears to be without merit. Mississippi Code 99-19-1 provides that "[n]o statutory change of any law affecting a crime or its punishment or the collection of a penalty shall affect or defeat the prosecution of any crime committed prior to its enactment…." Miss. Code. Ann. § 99-19-1. Furthermore, "all laws defining a crime or prescribing its

2.    Zales Knowingly, Intelligently, and Voluntarily Pleaded Guilty to the Charge of Uttering a Counterfeit Instrument

Zales' first and second grounds for habeas relief challenge the voluntariness of his guilty plea. Zales argues in several different ways that he was not properly informed of the basis for the charges against him and that he was coerced into pleading guilty. However, Zales' assertions are unsupported by the record, which reflects that (1) Zales clearly understood the charge to which he pleaded guilty, and (2) he voluntarily entered his guilty plea.

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000) (citing *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995)). "A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats[,] misrepresentation[,] or perhaps by promises that are by their nature improper…." *Id.* (citing *Brady*, 397 U.S. at 755). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the

---

punishment … shall be continued in operation for the purpose of providing punishment for crimes committed under them … unless otherwise specially provided in [amendatory or repealing] statutes." *Id.* The Mississippi Supreme Court has explained that this statute requires that "the sentencing court must follow the version of a statute in existence at the time a crime was committed." *Wilson v. State*, 194 So. 3d 855, 868 (Miss. 2016). Zales argues that *Vanderbark v. Owens-Illinois Glass Co.*, 311 U.S. 538 (1941) supports his position, *see* (ECF No. 1, at 64-65), but his reliance on *Vanderbark* is misplaced. *Vanderbark* dealt with a federal court's application of mid-suit changes to state law that occur when the court sits in diversity. This analysis is inapposite to the present circumstances, where the court is being asked to review a state court decision for violations of federal law.

charges against him that his plea cannot stand as an admission of guilt." *James*, 56 F.3d at 666 (citing *Henderson v. Morgan,* 426 U.S. 637, 645 n.13 (1976)). "The critical issue in determining whether a plea was voluntary and intelligent is 'whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect.'" *Id.* (quoting *Taylor v. Whitley,* 933 F.2d 325, 329 (5th Cir.1991)). If the record shows the defendant "understood the charge and its consequences," this Court will uphold a guilty plea as voluntary even if the trial judge failed to explain the offense. *Id.* (quoting *Davis v. Butler,* 825 F.2d 892, 893 (5th Cir.1987)).

The plea and sentencing hearing transcript is excerpted throughout the circuit court opinion denying Zales' state petition for post-conviction relief. The circuit court explained to Zales the charges against him, including his indictment as a habitual offender:

> **THE COURT:** Now, as I understand it, you're here in connection with a matter that came to the attention of law enforcement here in Kemper County back on August 7 of 2012. On that day, as I understand it, it was alleged that you presented as true to Tracy Murray, the Circuit Clerk here in Kemper County, a certificate of marriage knowing that the name of Dean Stedman, an ordained minister, was not a genuine signature thereon. The matter was submitted to the April 2013 Grand Jury here. They did indict you on a multiple-count indictment, but Count III is the only one that you're submitting you plea of guilty on; right?
>
> **ANSWER BY DEFENDANT:** Yes, sir. What about no contest?

12

**BY MR. EVANS (FORMER ATTORNEY AND ADVISOR FOR PRO SE DEFENDANT)**: It's an *Alford* plea. He'll get to that point.

**BY DEFENDANT**: Okay ..
…

**THE COURT**: Now, when your case was submitted to the April 2013 Grand Jury, they noticed that you had three prior felonies in Jefferson County, Alabama; one for forgery, one for credit card fraud, the other one for receiving stolen property; so you were indicted on the uttering the forged instrument with the enhanced provision of multiple felony status under Section 99-19-81. And you're submitting your plea of guilty on the uttering the counterfeit or altered or I guess not genuine document to the Clerk there with the understanding that it's under the provisions of Section 99-19-81 which calls for day-for-day time, maximum sentence; right?

**DEFENDANT:** Yes, sir. Can–

**THE COURT:** That's the correct answer. You also understand that you could get the ten years day for day and a $10,000 fine; however, you will get credit for all the days that you have served since August 7 of 2012. That's some 447 days against any sentence that may be imposed. Now, you've gone over the facts that led to you being charged with uttering or presenting the altered or counterfeit or not genuine instrument to the Clerk here in Kemper County back on August 7 of 2012? You've gone over those facts with Marcus; right?

**DEFENDANT:** Yes, sir. Can I ask you one question?

**THE COURT:** Yeah.

**DEFENDANT:** Okay. Well, the instrument was not counterfeit.

13

**THE COURT:** No. That's what I – I tried to correct it. Marcus wrote in here counterfeit, and it's really not. I think the way I would do it was exactly the way I presented it. I actually gave some thought to it. Presented as true to Tracy Murray, Circuit Clerk, Kemper County, a certificate of marriage knowing that - and this is what was on there, quote, Dean Stedman, an ordained minister, close quote, was not a genuine signature thereon. That's what you did; right?

**DEFENDANT:** That's presenting it; right?

**THE COURT:** Uh-huh.

**DEFENDANT:** Yes, sir.

**THE COURT:** Okay. And the penalty for that with the habitual criminal status is ten years day-for-day time less credit for time served, up to a $10,000 fine and fees and costs. You've gone over those facts with Marcus; right?

**DEFENDANT:** Yes, sir.

**THE COURT:** And he's told you exactly and I've told you exactly what the State - the elements of that crime - exactly what they'd have to prove to find you guilty; right?

**DEFENDANT:** Yes, sir.

(ECF No. 12-1, at 8-9).

The circuit court advised Zales of the constitutional rights he would waive by pleading guilty, and Zales, in turn, acknowledged that he understood the consequences of entering a plea:

**THE COURT:** Okay. And you're submitting your plea of guilty here today not because anybody is making you do it but because you've decided based on all the facts here that it's the right thing for you to do to get this behind you; right?

14

**DEFENDANT:** Yes, sir.

**THE COURT:** All right. Now, previously you had entered a plea of not guilty. And when you enter a plea of not guilty in a felony case like this, you've got rights. Those rights include the right to a speedy and public trial by jury. We've got a jury that's ready to start hearing the case at 1:00 here in about 15 minutes. You've got a right to use the power and process of the Court to compel witnesses that might be helpful in your defense to come and testify in your case. You've got a right to confront any witness that would testify against you in open court. You've got a right to have the assistance of a lawyer or the assistance of Marcus in whichever respect that you wish to have him assist you in that trial. At the trial, you'd have the presumption of innocence. That means the State would have the burden of proving beyond a reasonable doubt each element of the offense-as I've gone over with you. At that trial, you could testify; or if you choose not to do so, you could remain silent. If you remain silent, then I would instruct the jury that they can't use the fact that you didn't testify against you in determining your guilt or innocence. And finally, if you have a trial and you're found guilty, you have a right to appeal the conviction with the assistance of a lawyer to the Supreme Court. You could do it on your own if you wanted to. I wouldn't advise it, but you have that right. *You understand those rights?*

**DEFENDANT:** *Yes, sir.*

**THE COURT:** *And you with to waive those rights, proceed on with your · plea of guilty on the Count III which is the uttering the not genuine instrument as proven?*

**DEFENDANT:** *Yes, sir.*

**THE COURT:** Okay. Under the provisions of Section 99-19-81; right?

**DEFENDANT:** Yes, sir.

*Id.* at 9-10 (emphasis in original).

Finally, the circuit court made sure that Zales understood the *Alford* plea he was entering and the consequences of his plea:

> **THE COURT:** All right. So basically then, this is - I'll show on here that like we said, the State is going to do several things. They're going to dismiss, with prejudice, the kidnapping charge and the forcible rape charge if I accept your plea of guilty on the presenting the nongenuine–
>
> **DEFENDANT:** Is that a no contest plea?
>
> **THE COURT:** Yes.
>
> **DEFENDANT:** That's a no contest?
>
> **THE COURT:** Well, you're entering a plea of guilty, but you're not admitting you're guilty.
>
> **DEFENDANT:** Okay.
> …
>
> **THE COURT:** Okay. Now, as I understand it - and we talked about this briefly just a minute ago - you're entering a plea of guilty, but you just feel like that technically for whatever reason you're not guilty of the offense; right?
>
> **DEFENDANT:** That's right, yes, sir.
>
> **THE COURT:** But you understand with this habitual criminal enhancement and possibility of consecutive life sentences plus another ten years and all that being day-for-day time that you feel like although it's not something you feel like you're technically guilty of, the better thing for you long-term is to go ahead, accept the deal and get the matter behind you; right?
>
> **DEFENDANT:** Yes, sir.
> …
>
> **THE COURT:** All right. And with that understanding, you – you want to proceed on with your plea of guilty?

**DEFENDANT:** Yes, sir.

…

**THE COURT:** All right. Looks like you signed and swore to your plea petition just a few minutes ago; is that right?

**DEFENDANT:** Yes, sir.

**THE COURT:** And now that we've gone over it on the record in open court, are you satisfied the matters and facts set forth in you plea petition are all true and correct?

**DEFENDANT:** I guess, yes, sir.

**THE COURT:** And you want to proceed on with your plea of guilty on Count III of the three-count indictment?

**DEFENDANT:** Yes, sir.

*Id.* at 10-12.

The record makes clear that Zales understood the nature of his plea agreement. He heard the evidence that the prosecution would prove at trial and was explained the rights he was waiving by pleading guilty – including the rights to trial by jury, the presumption of his innocence at trial, the right to compel witness testimony and confront witnesses, the right to the assistance of a lawyer, and the right to not testify against himself. Zales further understood that he had been indicted as a habitual offender because of his three previous felony convictions in Jefferson County, Alabama, which subjected him to a sentence of ten years.

The Mississippi Court of Appeals concluded that (1) "the record refutes his involuntariness claim" and (2) "there was a sufficient factual basis for his plea." *Zales*, 194 So. 3d at 186. The undersigned concurs. Zales unequivocally stated that

17

he understood the nature and substance of the charges against him and accordingly elected to enter a plea of guilty. His arguments to the contrary are belied by the record.

3.    Zales Did Not Receive Constitutionally Deficient Assistance of Counsel

Zales' third ground for habeas relief challenges the effectiveness of the assistance of his court-appointed counsel. Zales argues that "[t]he trial court, the government, [and his] stand by counsel failed to investigate the use of prior convictions … to enhance [his] sentence" after Zales stated his desire to challenge the use of these prior convictions on grounds that he "was not represented by counsel" in those proceedings. (ECF No. 1, at 59).

A habeas petitioner must establish two elements to demonstrate that he suffered constitutionally deficient assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or ... sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (finding same standard is used for plea process). "'To satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable

18

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Montoya*, 226 F.3d at 408 (quoting *Hill,* 474 U.S. at 59). "The habeas petitioner has the burden to prove ineffectiveness by a preponderance of the evidence." *Id.* (citing *Martin v. Maggio,* 711 F.2d 1273, 1279 (5th Cir.1983)).

Zales argues that he received prejudicially ineffective assistance of counsel, but ignores the salient fact that he represented himself when he elected to plead guilty. Although Zales does not now challenge the trial court's decision to let him proceed *pro se*, the record establishes that Zales' decision to represent himself was informed and voluntary. *See Faretta v. California*, 422 U.S. 806, 835 ("When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits[;] he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"). The circuit court judge asked Zales about his educational background and learned that Zales has a high school diploma and an associates degree from Jefferson State Community College in Birmingham, Alabama. *See* (ECF No. 12-1, at 14-15). The circuit court "informed [Zales] that Mr. Evans was capable counsel and warned [Zales] of the dangers of self-representation." *Id.* at 15. "The [circuit] judge explained that Zales … would be 'held to the same standard as a lawyer,'" which Zales said he understood, and the

judge "further warned that the rules of evidence applied." *Zales*, 194 So. 3d at 187. After "a lengthy inquiry" and advisory, the court allowed Zales to represent himself but required Mr. Evans to remain part of the proceedings as Zales' stand-by counsel. *Id.* Evans was present "to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta*, 422 U.S. at 846 n.46.

"[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Id.* Even if Zales could somehow demonstrate that he received deficient assistance of counsel, he does not argue prejudice. Zales does not maintain that he would not have pleaded guilty if he had known that he could have challenged the trial court's use of his prior convictions. The record establishes that Zales' ineffective assistance of counsel is without merit.

## III. RECOMMENDATION

Based on the above analysis, the undersigned recommends that Daniel Richard Zales' Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus be denied and this case dismissed.

## IV. NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and

> submit them to the assigned district judge. Within seven
> days of service of the objection, the opposing party or
> parties must either serve and file a response or notify the
> district judge that they do not intend to respond to the
> objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 3rd day of May, 2018.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE